IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THOMAS J. CARTER, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 15 C 2256 |
| JPMORGAN CHASE BANK, N.A. & U.S. SECURITY ASSOCIATES, INC., | ) ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Thomas J. Carter has sued U.S. Security Associates, Inc. and JPMorgan Chase Bank, N.A., alleging that they violated the Illinois Human Rights Act (IHRA), 775 ILCS 5/2–102(A), the Vietnam Era Veterans Readjustment Assistance Act (VEVRAA), 38 U.S.C. § 4212, and the Uniformed Services Employment and Reemployment Rights Act (USERRA), 32 U.S.C. § 4311(a). Defendants have moved to dismiss Carter's amended complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The Court grants defendants' motion to dismiss for the reasons stated below.

## Background

The Court takes the following facts from Carter's complaint, accepting his allegations as true for purposes of the present motion. *See Fortres Grand Corp. v. Warner Bros. Entm't Inc.*, 763 F.3d 696, 700 (7th Cir. 2014). Carter is a retired Captain of the United States Army. On April 24, 2014, Carter entered the JPMorgan Chase Regional Data Center building in Elk Grove Village, Illinois, where he was scheduled to

interview for a job with Randstad Technologies, one of Chase's information technology subcontractors.  Upon entering the building, Carter arrived at a security checkpoint, where he was met by Humberto Santillan and Lyneth Cross, security officers for Chase subcontractor U.S. Security.

When Carter gave his name and reason for visit, Santillan and Cross requested that he present identification.  Carter presented his DD Form 2 United States military identification card.  Santillan rejected Carter's military identification, telling Carter that the only acceptable form of identification was a valid driver's license or a passport.  Carter argued with Santillan that his military identification was valid federal identification and that Santillan was required to accept it, and he explained that he had left his driver's license in his motor vehicle.  Santillan, however, continued to insist on a driver's license or passport, and he would not allow Carter past the security checkpoint without seeing one or the other.  Feeling as though Santillan's refusal to accept his valid military identification was going to cost him the opportunity to interview for and secure a job with Randstad, Carter demanded to know Santillan's manager's name and contact information.  Santillan denied this request and ordered Carter to leave the building at once.

Carter then proceeded to his car, retrieved his driver's license, and returned to the building.  But he was denied entry once again by Santillan and Chase employee Jim Petykowski, the data center's manager.  Santillan apparently believed that Carter had been carrying his driver's license all along, telling Carter that "you lied to me so I'm not letting you in."  Although Carter showed his military identification card and driver's license to both men, Petykowski told Carter that the data center's security protocols

were strict and that he would not be permitted to pass the security checkpoint due to his behavior, which Santillan had deemed suspicious. Carter ultimately did interview with Randstad representative Floyd Petty at Petty's hotel, but Carter did not secure employment with the firm. Carter says that Petty later indicated Randstad would have hired him but for his run-in with Santillan and Petykowski.

In May 2014, Carter filed a discrimination charge against Chase with the Illinois Department of Human Rights (Department) alleging that Chase denied him the full and equal enjoyment of a place of public accommodation due to his military status, in violation of the IHRA. After conducting an investigation, the Department dismissed Carter's charge for lack of substantial evidence in February 2015. Carter responded shortly thereafter by asking the Illinois Human Rights Commission (Commission) to review the dismissal pursuant to 775 ILCS 5/8–103. The review is still pending.

Meanwhile, Carter filed suit in this Court in March 2015, alleging that Chase and U.S. Security violated the IHRA and failed to comply with their own standard operating procedures. Carter subsequently amended his complaint. Although Carter has provided detailed records from his ongoing proceedings with the Department and the Commission, his amended complaint does not focus on the IHRA as the basis for his suit. Instead, Carter relies on VEVRAA and USERRA, claiming that Chase and U.S. Security violated his rights by refusing to hire him based on his military status. Defendants have asked the Court to dismiss Carter's complaint with prejudice, arguing that he has failed to state any claim on which relief may be granted and that the Court lacks subject matter jurisdiction to consider any claim Carter might have sufficiently pleaded.

## Discussion

**A. IHRA Claim**

Unlike his initial complaint, Carter's amended complaint does not cite IHRA as grounds for maintaining this lawsuit. But due to its frequent reference to the IHRA and Carter's proceedings before the Department and the Commission, and because he is a *pro se* litigant whose filings the Court construes liberally, *see Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011), the Court will assume Carter intends to assert a claim under IHRA. Defendants have moved to dismiss any such claim for lack of subject matter jurisdiction. When deciding a motion to dismiss for lack of subject matter jurisdiction, the Court accepts the complaint's factual allegations as true and draws reasonable inferences in the plaintiff's favor. *Rueth v. EPA*, 13 F.3d 227, 229 (7th Cir. 1993).

The Court does not have subject matter jurisdiction over Carter's claims under the IHRA. The IHRA "provides a comprehensive scheme of procedures and remedies for redressing human rights violations." *See Rabe v. United Air Lines*, 971 F. Supp. 2d 807, 819 (N.D. Ill. 2013). Claims under the IHRA fall within the exclusive jurisdiction of the Department and the Commission, and a complainant may only commence a civil action in a circuit court after he receives a final report from the Department or the Department fails to issue its report within 365 days after the charge is filed. 775 ILCS 5/7A–102(D), (G)(2). If the Department dismisses a complainant's claim for lack of substantial evidence, the complainant may file a civil action or, alternatively, appeal the Department's dismissal to the Commission. 775 ILCS 5/7A–102(D)3). If a complainant chooses the Commission-appeal route, however, he "may not later commence a civil

action in a circuit court." *Id.* Rather, the complainant may only seek judicial review after a final Commission order by "filing a petition for review in the [state] Appellate Court within 35 days [of the decision]." 775 ILCS 5/8–111.

When the Department dismissed Carter's charge for lack of substantial evidence, he submitted a timely request for review before the Commission. His claim before the Commission is still pending. Carter has therefore not yet exhausted his administrative remedies as required by the IHRA, and may not pursue such action here.

**B.     VEVRAA Claim**

Carter argues that his factual allegations are sufficient to state a claim under VEVRAA, which imposes affirmative hiring obligations on certain government contractors and forbids them from discriminating against Vietnam War veterans. *See* 38 U.S.C. § 4212(a)(1), (b). If a qualified veteran believes a government contractor has failed or refused to comply with the law, VEVRAA provides that the veteran "may file a complaint with the Secretary of Labor, who shall promptly investigate such complaint and take appropriate action in accordance with the terms of the contract and applicable laws and regulations." 38 U.S.C. § 4212(b). VEVRAA does not, however, provide a private right of action for a person who believes he has been wrongly deprived of employment. *See Wikberg v. Reich*, 21 F.3d 188, 189 (7th Cir. 1994). Carter may file a complaint with the Department of Labor, but he cannot state a claim under VEVRAA in this Court.

**C.     USERRA Claim**

Defendants contend that Carter's failure to exhaust administrative remedies similarly bars him from bringing suit under USERRA. Citing *Alexander v. Gardner-*

*Denver Co.*, 415 U.S. 36, 47 (1974), *Cheek v. Western & Southern Life Insurance Co.*, 31 F.3d 497, 500 (7th Cir. 1994), and *Tartt v. Northwest Community Hospital*, No. 00-C-7960, 2004 WL 2254041, *5 (N.D. Ill. Oct. 5, 2004), defendants argue that the Court lacks subject matter jurisdiction to consider Carter's claims because he has not obtained a right to sue letter from the Equal Employment Opportunity Commission (EEOC) and because his claims are not like or reasonably related to the allegations in his IHRA charge. This argument neglects the differences between USERRA and Title VII. USERRA does not impose the same exhaustion obligations as, for example, Title VII of the Civil Rights Act of 1984. *See* 42 U.S.C. § 2000e–5(b). If a veteran suffers adverse employment action and believes his military status was the motivating factor, he may file a USERRA claim in federal court without first exhausting administrative remedies. *See* 38 U.S.C. § 4323(a)(3(A) ("A person may commence an action for relief with respect to a complaint against . . . a private employer if the person has chosen not to apply to the Secretary [of Labor] for assistance."); *id.* at § 4323(b)(3) ("In the case of an action against a private employer by a person, the district courts of the United States shall have jurisdiction of the action."); *see also Tartt*, 2004 WL 2254041, at *5 (same) (refusing to hear plaintiff's claims under Title VII because the EEOC had not authorized the suit, but evaluating the sufficiency of plaintiff's USERRA claims without reference to the EEOC). And unlike VEVRAA, USERRA expressly provides a private right of action. *See* 38 U.S.C. § 4323(d)(1) & (e).

When considering a motion to dismiss under Rule 12(b)(6), the Court accepts a plaintiff's allegations as true and draws reasonable inferences in the plaintiff's favor. *Parish v. City of Elkhart*, 614 F.3d 677, 679 (7th Cir. 2010). To state a viable claim, a

plaintiff must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Even in the wake of the Supreme Court's decisions in *Twombly* and *Iqbal*, "the pleading standards for *pro se* plaintiffs are considerably relaxed," and their pleadings continue to be held "to a less stringent standard than formal pleadings drafted by lawyers." *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1027 (7th Cir. 2013) (internal quotation marks omitted).

Under USERRA, a "person who is a member of . . . a uniform service shall not be denied initial employment . . . by an employer on the basis of that membership." 38 U.S.C. § 4311(a). A person's military status cannot be a motivating factor in an employer's decision to deny him an employment opportunity "unless the employer can prove that the action would have been taken in the absence of such membership." *Id.* at § 4311(c)(1). The Supreme Court has interpreted USERRA to impose liability when a person with decision-making authority "performs an act motivated by antimilitary animus that is intended by the [decision-maker] to cause an adverse employment action, and [] that act is a proximate cause of the ultimate employment action." *Staub v. Proctor Hosp.*, 562 U.S. 411, 422 (2011).

Even construed liberally, Carter's complaint fails to state a claim under USERRA. With some stretching, it is possible to construe the complaint to allege that antimilitary animus motivated U.S. Security's and Chase's refusal to admit Carter to the building. But even if these allegations were well pleaded and true, they would not be enough to

7

impose liability on U.S. Security or Chase, because Carter has not alleged that either of those entities denied him employment or made any employment decision at all. USERRA does not impose liability on all persons who, motivated by antimilitary animus, take some kind of action to prevent a veteran from securing employment. *See Gordon v. Wawa, Inc.*, 388 F.3d 78, 84–85 (3d Cir. 2004) ("USERRA . . . is not designed to protect employees from the tortious acts of employers or to remedy work-related harms. Rather, its provisions are tailored to effectuate its underlying purposes . . . [including] prohibiting discrimination against them because of their uniformed services."). Instead, USERRA is solely focused on employers. *See* 38 U.S.C. § 4323. By its terms, USERRA only imposes liability on an "employer," *id.* at § 4311(a), which it defines as "any person, institution, organization, or other entity that pays salary or wages for work performed or has control over employment opportunities." *Id.* at § 4303(4)(A)(iii). Carter does not allege that either Chase or U.S. Security pays the wages of Randstad employees or has the power to hire or fire Randstad employees. Nor does he allege that either defendant exercised control over Randstad's independent hiring decisions, or that Randstad was acting as an agent of either defendant when it chose not to hire him. Carter conceivably could pursue a "cat's paw" theory of liability—that Santillan and Petykowski performed acts motivated by antimilitary animus that they intended to cause Randstad to reject Carter, and this proximately caused Randstad not to hire him—but under that approach, it would be Randstad, the putative employer, that is liable, not Chase or U.S. Security. *See Staub*, 562 U.S. at 422. Carter has not sued Randstad; indeed, he says Randstad acted "in an honorable manner." *See* Pl.'s Resp. to Def.'s Mot. to Dismiss at 15.

**Conclusion**

For the foregoing reasons, the Court grants defendants' motion to dismiss [dkt. no. 28]. Unless plaintiff files an amended complaint by September 11, 2015 that includes at least one viable claim over which this Court has jurisdiction, the Court will instruct the Clerk to enter judgment in favor of the defendants.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: August 20, 2015